Curia, per

Evans, J.
By the 2d section of the Act of 1841, (11 Stat. 153) to extend the bounds of the Jails in the several judicial districts of this State, “ all prisoners in execution in any civil process, who may be minded to take the benefit of the prison rules, shall be obliged, not only to render the schedule now required, but shall also, at the expiration of the notice pre *11 scribed under the insolvent debtor’s and prison bounds Acts, respectively, assign and surrender, as far as in his power, the property mentioned in said schedule, and in default of such assignment and surrender, the bond for the rules shall be forfeited, and the defendant may be committed to the body of the jail.” The 3d. section requires that the bond to keep the bounds shall “ be made to conform to the provisions of the law as modified by this Act.”
In these cases the defendant, McMullan, being in the custody of the sheriff, at the suit of the plaintiffs; gave bonds to keep the bounds, in pursuance of the Act of 1841,'-and applied for a discharge under the Act of 1759, tor the relief of insolvent debtors. Some objection was made to his schedule, but this being decided in his favour, he was discharged by an order, in the following words. “ The defendant having assigned his schedule in the above case, and having complied with all the other requirements of the law; on motion, ordered that he be discharged from the custody of the sheriff.” Subsequently, these actions were brought on the prison bounds bonds, and the breach set out is, that the property contained in the schedule had not been surrendered. The defendants pleaded the discharge in.bar of the actions; to which there were demurrers, and we are now to decide whether the pleas are sufficient.
In Hibler v. Hammond, 2 Strob. 105, the defendant had been discharged without objection. Subsequently an action was brought on his- bond to the sheriff, and the breach assigned was, that his schedule did not contain certain property of which he was the owner at the time of the discharge. It was decided that the discharge was a bar to the action. The defendant was not entitled to his discharge, unless his schedule was true, and if it was false, that question should have been made on the motion for his discharge, and could not again be brought into issue. Every matter that was or might have leen put in issue in any judicial proceeding was decided by it. This case, it is *12 said, decides the cases under consideration, and it is conceded, that if the surrender of the property mentioned in the schedule should precede the discharge, or, in other words, was a condition precedent to the discharge, then the plaintiffs have no right of action. The question is res judicata, on the same principles which governed in the case of Hibler v. Hammond. To determine this question, it will be necessary to look into the old law, and to inquire what were its defects, which the Act of 1841 was designed to remedy.
By the Act of 1759, (4 Stat. 87-88) the debtor is required, within six months after his discharge, to deliver up to his as-signee or assignees, “ all such goods and effects contained in his schedule, as shall be afterwards in his power to deliver,” and in default, he may be remanded to prison, there to remain, unless good cause to the contrary be shown, until he shall fully comply with the terms of this law. And by another section, it is made a part of the oath, that he will, to the utmost of his power, endeavour to collect all and singular the title deeds to his land, together with the remainder of his goods and effects contained in his said account, and will surrender them to his assignees as soon as possible after his discharge. The Act of 1759 provided only for the discharge of debtors in actual confinement.
By the Act of 1788, (5 Stat. 78,) any prisoner on mesne or on final process, is entitled to remain in the prison rules, provided he shall, within forty days after being taken in execution, give satisfactory security to the sheriff, “ that he or she will not only remain within the said rules, bounds or limits, but will also, within forty days, render to the clerk of the court, in the district where he or she shall be- confined, a schedule, on oath or affirmation, (agreeable to the form of his or her religious persuasion) of his or her whole estate, or of so much thereof as will pay or satisfy the sum due on the execution by force of which he or she shall be confined.”
By the 6th section of the Act of 1833, (6 Stat. 493) which *13 relates altogether to discharge under the prison hounds Act, it is enacted that the prisoner shall not be discharged “until the property contained in his schedule is produced and delivered to the assignee,” if it has been in his power to deliver since his arrest.
This is all the legislation applicable to these cases anterior to the Act of 1841, before recited. The Act of 1788 contained no provision for the delivery of the property, nor did it impose any penalty for the non-delivery, and it was to remedy this defect, I suppose, that the Act of 1833 was passed. The condition of pre-delivery was confined to discharges under the prison bounds Act, (I presume) because it was considered that the creditor had a sufficient guaranty under the insolvent debtor’s Act, in the oath and liability to imprisonment of the debtor.
In the case of Davis v. Ruff, 1 McM. 1, this court decided that the condition of a prison bounds bond required only that the debtor should, within forty days, render to the clerk a schedule of his estate, but he was not required to apply for a discharge or to assign his schedule. This decision was followed soon after by the clause in the Act of 1841 before quoted, and, I presume, the leading object of the Act was to remedy this great defect in the law. The Act of 1833 left the law, as to the delivery of the property, unchanged in discharges under the insolvent debtor’s Act of 1759. The provisions of that Act would often prove an insufficient security, and the words of the Act of 1841 shew very clearly that the Legislature intended to enlarge it, by requiring the additional guaranty of the prison bounds bond. If the words, “ at the expiration of the notice,” had been omitted, there would be nothing in the Act which would indicate any intention to alter the law as to the time of delivery. The condition of the bond would be saved, if the property was surrendered according to the requirement of the Act of 1759. Can the use of those -words vary the construction ? If literally interpreted, the assignment as well as the surrender *14 must be made on the day of the expiration of the notice, and yet a thousand unforseeh events might render it impossible. The prisoner may be sick and unable to come into court to take the oath; there might be no court; the truth of the schedule may be disputed, and the issue postponed to another term. ' In these very cases, it is said, the issue ivas pending two or three courts before the discharge. None of these causes, I presume, would forfeit the prisoner’s bond, because he did not assign his schedule on the day of the expiration of the notice. Similar objections will apply with equal force to the question when the surrender is to be made, and such a rigid interpretation would, in most cases, entirely defeat the benefits intended to be granted by our insolvent laws, one of which recites, by way of preamble, that the confinement of persons, in civil cases, ought to be less rigorous than heretofore.
If a prisoner, in actual confinement, had applied for the benefit of the insolvent debtor’s Act, there can be no doubt he would have been allowed time to deliver the goods and effects mentioned in his schedule, and I do not perceive any thing in the Act of 1841 which requires a different result, where the debtor has had the liberty of the bounds. If the Legislature had so intended, some more explicit words, such as are in the Act of 1833, would have been used. The great object of the Act of 1841 was to compel the debtor to assign and deliver the property contained in the schedule. Both of these must, of course, be subsequent to the expiration of the notice, but the time, as well as the manner, were left to be regulated by the existing laws.
As to the motion to plead over, that comes too late after a decision on a general demurrer.
The motion to reverse the decision of the Circuit Court, is, therefore, dismissed.
O’Neall, Frost and Withers, JJ. concurred.

Motion dismissed.